WILLIAM GULDEN

*v.*

AUGUST W. LUCAS et al.

[Decided January 24th, 1913.]

1. The Chattel Mortgage act (*P. L. 1902 pp. 487, 488 §§ 4, 5*), requiring immediate possession by the mortgagee, or an immediate recording of the mortgage, means, by "immediate recording," as soon as may be by reasonable dispatch, under the circumstances.

2. A chattel mortgage was ready for record and in mortgagee's possession between twelve and one o'clock on Saturday, the 27th. The mortgagee's place of business was only an hour's ride by trolley from the office of the county register, which could be reached by mail in the afternoon, if the document was mailed in the morning, or, if mailed in the afternoon, it would be delivered the next morning on a business day. If the mortgage had been mailed on Saturday, the 27th, it would have been delivered on Monday, the 29th, and, if mailed on the morning of the 29th, would have been delivered to the register during office hours; but it did not in fact reach his office until the afternoon of the 30th.—*Held*, that the recording of the mortgage was not an "immediate recording" within the Chattel Mortgage act (*P. L. 1902 pp. 487, 488 §§ 4, 5*), which means as soon as may be by reasonable dispatch, under the particular circumstances.

Heard on pleadings and proofs.

*Mr. Charles W. Kappes* and *Mr. Emil Walscheid,* for the complainant.

*Messrs. Hudspeth, Rysdyk & Garrison,* for the defendants.

GARRISON, V. C.

The only point to be decided in this suit at this time is whether or not a chattel mortgage given by the defendant Lucas to the complainant, Gulden, is valid as against the defendant the Berghoff Brewing Company. The Berghoff Brewing Company was a creditor of Lucas, has obtained a levy and is legally in a

position to attack the validity of the chattel mortgage in question. Prior to November 26th, 1909, Lucas was indebted to the Berghoff Brewing Company in a sum exceeding all the money involved in this suit. On the 26th of November, 1909, in the afternoon of that day, Mr. Kappes (who was the lawyer for Mr. Gulden) and Mr. Gulden and Mr. Lucas met for the purpose of having Lucas make a chattel mortgage to Gulden for money due from Lucas to Gulden.

Mr. Kappes testifies, and he is not contradicted, either by other oral testimony or by written evidence, that Mr. Gulden left before the chattel mortgage was executed; that at the time that Gulden left everything had been agreed upon excepting the manner of repayment. After Gulden left, Kappes and Lucas agreed tentatively upon the matter just mentioned and the chattel mortgage was fully executed, acknowledged and in shape for record. Mr. Kappes, however, says that he had no right at that time to accept this mortgage on behalf of his principal, Mr. Gulden, and would not have such right until Mr. Gulden had been informed of the tentative agreement as to the terms of repayment (or payment, whichever phrase is the correct one). On Saturday, the 27th of November, 1909, Mr. Kappes, about the middle of the day (some time, he says, between twelve and one), saw Mr. Gulden, and Gulden approved of the mortgage as drawn, and Kappes left it with Gulden. On Tuesday, the 30th of November, 1909, at twenty-nine minutes after twelve o'clock noon, the mortgage was recorded.

The sole question is whether or not, under the statute and the decisions construing the same, this mortgage was recorded in time to save it from attack as against the existing creditor.

I had occasion, in the case of *Brockhurst* v. *Cox, 71 N. J. Eq. (1 Buch.) 703; affirmed, 72 N. J. Eq. (2 Buch.) 950,* to consider the existing law in this respect; and since the court of errors and appeals adopted the opinion filed in that suit, the rule is as stated therein. It was there held that the provisions of the Chattel Mortgage act require an immediate possession by the mortgagee, or an immediate recording of the mortgage, and that "immediate recording" means as soon as may be by reasonable dispatch under the circumstances of the case.

The circumstances of the case to be here considered are that this mortgage, at the very latest, was complete and ready for record and in the possession of the mortgagee at some time between twelve and one o'clock on Saturday, the 27th day of November, 1909, conceding, in his behalf, that it was not to be considered to be operative and ready for record from five o'clock in the afternoon of Friday, the 26th, when his attorney received it in its completed, executed condition. The mortgagee's place of business, where the mortgage was delivered to him, was not more than one hour by trolley from the office of the register of Hudson county, where the mortgage should properly be recorded. By messenger, it could reach said office in one hour; by mail, it could reach the office in the afternoon of any business day on which it was mailed in the morning; or, if mailed in the afternoon, would be delivered the next morning on any business day. If it had been immediately sent by a messenger, it would have reached the office on the afternoon of the 27th. If it had been mailed on Saturday, the 27th, it would have been delivered in the morning of Monday, the 29th; and if mailed on the morning of the 29th, would have reached the office some time during business hours of that day. As above stated, it did not reach the office until afternoon of the 30th.

I feel constrained to hold that, in no proper use of language, can this be said to be an "immediate recording" under the circumstances of the case. If "immediate recording" is extended so as to include more time than is reasonably adequate under the circumstances, the rule laid down is practically abrogated. I cannot find that the time consumed between the receipt of this mortgage by the mortgagee and its recording could reasonably have been utilized in getting the paper to the place of record. The result is that this mortgage must be held to be invalid as against the existing creditor.